UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL CUNNINGHAM,

                      Plaintiff,          1:05-CV-1127-DNH-RFT

        v.

NEW YORK STATE DEPARTMENT OF
LABOR; LINDA ANGELLO, individually and
in her official capacity for the New York State
Department of Labor; MARY HINES, individually
and in her official capacity for the New York
State Department of Labor; and PATRICIA
RHODES-HOOVER, individually and in her
official capacity for the New York State
Department of Labor,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

DONOHUE, SABO, VARLEY & HUTTNER, LLP   KENNETH G. VARLEY, ESQ.
Attorneys for Plaintiff
24 Aviation Road
Albany, New York 12212-5056

ATTORNEY GENERAL OF THE STATE OF       JAMES J. SEAMAN, ESQ.
NEW YORK                                   Assistant Attorney General
Attorneys for Defendant
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff Michael Cunningham ("plaintiff") brings suit against defendants New York State Department of Labor ("NYDOL"), former NYDOL Commissioner Linda Angello, former NYDOL Deputy Commissioner Mary Hines, and NYDOL Counsel Patricia Rhodes-Hoover. Pursuant to the mandate of the Second Circuit Court of Appeals, see Cunningham v. N.Y. Dep't of Labor 326 F. App'x 617 (2d Cir. 2009),[1] the only remaining question is whether defendants' motion for summary judgment should be granted as to plaintiff's claims of unlawful retaliation arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1983. The parties have submitted their briefs in response to the limited issues identified in the appellate court's summary order, see Cunningham, 326 F. App'x at 621 & n.3, and defendants' motion was considered without further oral argument.

**II. BACKGROUND**

**A. Facts**

All of the following facts are undisputed unless otherwise indicated. (See Defs.' Statement of Material Facts, Dkt. No. 36-96; Pl.'s Resp. to Defs.' Statement of Material Facts, Dkt. No. 40-2.) In 1988, plaintiff was hired as the Director of NYDOL's Office of Staff and Organizational Development ("OSOD"). As the OSOD Director, plaintiff supervises approximately 20 staff members and is responsible for overseeing the training of NYDOL

---

[1] Under Second Circuit Local Rule 32.1(b), the summary order issued by the Court of Appeals is hereinafter cited only for its facts and not its precedential value.

employees throughout the state.  He and his staff are also responsible for arranging a number of state-wide training programs, including "CSI conferences."[2]

On February 16, 2000, plaintiff forwarded a lewd cartoon to a co-worker via email on his work computer.  Following an investigation conducted by the New York State Inspector General's Office, plaintiff agreed to forfeit one week of annual leave in exchange for NYDOL's decision to drop its disciplinary charges.

In March of 2001, defendant Angello was appointed NYDOL Commissioner.  She later hired defendant Hines as her Deputy Commissioner for Administration in June of 2001.  At that time, plaintiff's most immediate supervisor in NYDOL's chain of command was Associate Commissioner of Human Resources Jim Leary.  As a division director, Mr. Leary reported directly to defendant Hines.

On May 13, 2002, plaintiff approached defendant Hines to voice his concern about the lack of minorities being promoted at NYDOL.  On February 10, 2003, he filed a complaint with the United States Department of Labor's Civil Rights Center ("CRC") alleging that the disciplinary charges stemming from the lewd email he sent to a co-worker were the result of unlawful racial discrimination.  Plaintiff also asserted in his CRC complaint that minorities at NYDOL were frequently subject to unequal treatment and that he personally had been subject to a hostile work environment on account of his status as an African-American.

In or shortly before March of 2004, plaintiff reiterated his concerns over the lack of minority promotions to the Director of NYDOL's Division of Equal Employment Opportunity,

---

[2] Neither of the parties define the abbreviation "CSI."  In any event, it is undisputed that these conferences consisted of training for investigators in multiple state agencies across the state.

Andrew Adams. Plaintiff raised the same promotion issues with Mr. Leary at the end of March and again in the beginning of April of 2004.

On April 14, 2004, defendant Hines sent an email to several NYDOL employees, including plaintiff, asking them to attend then-Governor Pataki's annual prayer breakfast on May 11, 2004. On April 15, 2004, plaintiff sent his son's résumé to Mr. Leary in connection with his son's application for a temporary job with NYDOL. Plaintiff's son was hired effective April 22, 2004 as a temporary employee within the NYDOL's Division of Labor Standards. Defendant Hines objected to the decision to hire plaintiff's son. On May 4, 2004, an article in the Albany Times Union newspaper reported that defendant Hines had asked NYDOL employees to attend the Governor's prayer breakfast.

On June 25, 2004, the parties became aware that OSOD Assistant Director Pat Bell would require an extended leave of absence. Because Ms. Bell was responsible for, among other things, supervising the Albany office OSOD staff, her absence created a lack of adequate on-site supervision. Defendant Hines and plaintiff met on June 30, 2004 to discuss how to address these supervision issues. After deciding plaintiff would assume Ms. Bell's on-site supervision duties, his office was moved closer to OSOD staff on the first floor of the NYDOL building on July 30, 2004.

On August 2, 2004, plaintiff sent a memo to Mr. Leary and Executive Deputy Commissioner Dennis Ryan alleging that defendant Hines's decision to relocate his office to the first floor was an act of retaliation in response to his prior CRC complaint of racial discrimination and a hostile work environment. On August 26, 2004, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") asserting the same allegation of retaliation.

On September 9, 2004, defendant Hines inquired with Mr. Leary about plaintiff's upcoming work travel plans. In particular, defendant Hines asked why plaintiff intended to travel to New York City despite there being no meetings scheduled there. She also stated to Mr. Leary that she thought it was unnecessary for plaintiff to travel to NYDOL's New York City office because an Assistant Director was already in place there.

On October 8, 2004, Mr. Leary informed plaintiff that NYDOL would no longer host CSI conferences due to a lack of funding. That same day, Mr. Leary and plaintiff discussed defendant Hines's concerns over his travel schedule. Plaintiff was asked to provide more detail as to the nature of his work-related travel, and Mr. Leary explained that plaintiff should rely more heavily upon on-site staff members to handle office-specific matters in lieu of him traveling between Albany and other NYDOL offices. As a result, plaintiff cancelled his visits to the New York City office that did not involve scheduled staff meetings. On October 13, 2004, NYDOL received a copy of plaintiff's EEOC complaint.

Plaintiff drove to the OSOD office in New York City on October 14, 2004 for a meeting with a co-worker. After the meeting, plaintiff reported to his supervisors that he returned to his hotel room at 3:00 p.m. to make work-related phone calls, but his cell phone records do not provide details as to whom he called. That same day, defendant Hines learned that plaintiff had failed to attend a scheduled training meeting in New York City earlier in the morning. She also noted that plaintiff could have attended the meetings via video-conference instead of using NYDOL funds to travel to the OSOD office in New York City. Defendant Hines was particularly frustrated with plaintiff's decision to travel to New York City because he himself had repeatedly urged other NYDOL Directors to use video-conferencing as a cost saving measure. After discussing plaintiff's travels with defendant

Angello, defendant Hines asked the New York State Inspector General to investigate whether plaintiff's activities were work-related.

NYDOL held a Welfare-to-Work conference in Syracuse from November 30, 2004 to December 2, 2004. Plaintiff contends he was intentionally excluded from the planning and coordinating of the conference. In contrast, defendants maintain that plaintiff was mistakenly omitted from initial correspondence related to the conference. It is undisputed that plaintiff was eventually made privy to communications related to Welfare-to-Work conferences.

The Inspector General issued his investigative report on December 14, 2004. The report reflected that plaintiff had worked two hours less than he had claimed during his time in New York City. As a result, Mr. Leary admonished plaintiff for failing to work a full day and for not being more mindful of how to minimize his travel costs. Approximately two weeks later, an article published in the Albany Times Union newspaper reported that plaintiff had accused defendant Hines of retaliating against him for filing a complaint about her use of state resources to promote attendance at the Governor's annual prayer breakfast.

Plaintiff's lawsuit was commenced on September 7, 2005. In May of 2006, plaintiff learned that NYDOL's Workforce Division had a need for "functional alignment" training. Despite normally using OSOD for its training programs, the Workforce Division contracted with an outside consulting firm to provide the functional alignment training.

On June 27, 2006, plaintiff completed a negative performance evaluation of one of the employees under his supervision, Christine Thayer. At that time, Ms. Thayer was a probationary employee who split her work time between plaintiff's division and a separate division within NYDOL. Plaintiff indicated on Ms. Thayer's evaluation that she had a poor attitude and frequently appeared disgruntled. Although Ms. Thayer was removed from

plaintiff's division, she passed her probationary period and was employed full-time within another division of NYDOL.

### B. Procedural History

Following oral argument on January 29, 2008, in Utica, New York, defendants' motion for summary judgment was granted from the bench, (see Order, Dkt. No. 44), and plaintiff's complaint was dismissed in its entirety. (See J., Dkt. No. 45.) The decision to award summary judgment was based upon plaintiff's inability to raise an issue of fact showing that he suffered an adverse employment action. (Oral Argument Tr., Dkt. No. 48, 19-20.) Equally fatal to plaintiff's complaint was his failure to produce evidence of discriminatory animus. Id. at 19.

Upon appeal to the Second Circuit, the decision to grant summary judgment was affirmed for all causes of action except plaintiff's claims of retaliation in violation of Title VII and his First Amendment right to free speech. Cunningham, 326 F. App'x at 621. The appeals court determined that the standard for establishing an adverse employment action in a discrimination claim was improperly applied to plaintiff's retaliation claims. Id. Accordingly, the case was remanded for consideration of the different standard applicable to retaliation claims pursuant to the holding in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). In the event that plaintiff suffered an adverse employment action under the Burlington standard, the Second Circuit instructed that plaintiff must still raise an issue of fact that would tend to show defendants' proffered legitimate reasons were mere pretext for unlawful retaliation. Cunningham, 326 F. App'x at 621 n.3. Finally, with respect to plaintiff's First Amendment retaliation claim only, the case was remanded in order to consider whether that claim is precluded under the holding in Garcetti v. Ceballos, 547

U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006) (holding that a public employee's statement made pursuant to his official duties is not protected speech under the First Amendment).

## III. DISCUSSION

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Mandell, 316 F.3d at 377. Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986). After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56(e)(2); Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### A. Title VII Retaliation Claims

Retaliation claims brought under Title VII are subject to the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-26 (1973). See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). First, the plaintiff must demonstrate a *prima facie* case of retaliation. McDonnell Douglas,

411 at 802, 93 S. Ct. at 1824. Second, after the plaintiff establishes a *prima facie* case, the burden shifts to the defendant-employer to offer a legitimate, non-retaliatory reason for the action(s) giving rise to the plaintiff's allegations of retaliation. Id. Third, if the defendant produces sufficient evidence of a non-retaliatory reason, the burden shifts back to the plaintiff to show that defendant's proffered explanation is mere pretext for unlawful retaliation. Id. at 804, 93 S. Ct. at 1825. In order to establish a *prima facie* case of retaliation under the first stage of the McDonnell Douglas analysis, the plaintiff must establish, *inter alia*, that he suffered an adverse employment action. Gorzynski, 596 F.3d at 110 (citation omitted).

### 1. **Adverse Employment Actions**

As reflected in his memorandums of law, (see Pl.'s Mem. of Law, Dkt. No. 56, 6-13; Pl.'s Reply Mem. of Law, Dkt. No. 57, 8), plaintiff alleges four retaliatory actions: (1) the investigation of potential work-time abuse; (2) the relocation of his office from the fifth floor to the first floor of the NYDOL building in Albany; (3) defendant Hines's objection to the hiring of his son as a temporary NYDOL employee; and (4) the reduction in his workplace responsibilities, including his exclusion from the approval process for a Welfare-to-Work conference, the hiring of an outside consulting firm to provide functional alignment training, the discontinuation of CSI conferences, and his lack of authority to prevent Ms. Thayer from being hired as a full-time employee. The initial issue on remand is whether any of these alleged instances of retaliation rise to the level of an adverse employment action.

In Burlington, the Supreme Court explained "that Title VII's substantive provision and its antiretaliation provision are not coterminous." 548 U.S. at 67, 126 S. Ct. at 2414. The Court reasoned that the statute's protection against retaliation "depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as

witnesses." Id. Quite logically, the Court held that in order to establish an adverse employment action in connection with a retaliation claim, a plaintiff must present sufficient evidence to show that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68, 126 S. Ct. at 2415 (internal quotation marks and external citations omitted).

Although Burlington more broadly defined the protections afforded under Title VII, the holding did not insulate a complaining employee "from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. The Court emphasized the importance to "separate significant from trivial harms," id., and it delivered the oft quoted maxim that Title VII "does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998)). Accordingly, the question presented requires a careful distinction between the typical difficulties of the workplace and materially adverse acts "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." Burlington, 548 U.S. at 68, 126 S. Ct. at 2415 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843, 848 (1997)).

### a. The Investigation of Work-Time Abuse

Although plaintiff discusses at length how his work schedule was more closely monitored after he spoke up about the lack of minorities being promoted at NYDOL, he offers no explanation for how any investigation or supervision of his conduct would have dissuaded a reasonable employee from coming forward with a charge of unlawful discrimination. (See Pl.'s Mem. of Law, Dkt. No. 56, 6-9.) At most, plaintiff offers only the limited argument that the "attitude on the part of Ms. Hines had concrete effects as far as [he was] concerned." Id.

at 6.  However, this position ignores the objective standard created under <u>Burlington</u> as it focuses only upon plaintiff's own subjective beliefs.  <u>See</u> 548 U.S. at 68, 126 S. Ct. at 2415 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective.") (emphasis in original).

   Plaintiff's citation to the undersigned's decision in <u>Lee v. City of Syracuse</u>, 603 F. Supp. 2d 417, 436 (N.D.N.Y. 2009) is also unpersuasive.  Both parties argue that "the significance of any given act of retaliation will often depend upon the particular circumstances."  <u>Burlington</u>, 548 U.S. at 69, 126 S. Ct. at 2415.  The circumstances surrounding the investigation of the plaintiff in <u>Lee</u> differ substantially from those presented here.  In <u>Lee</u>, the plaintiff was accused of, *inter alia*, exposing herself at her employer's Christmas party.  <u>Lee</u>, 603 F. Supp. 2d at 428.  Her supervisor launched an investigation, during which he inquired with the plaintiff's co-workers about whether she had actually exposed herself.  <u>Id</u>.  The plaintiff vehemently denied any wrongdoing, and no disciplinary action was taken because no one came forward to substantiate the allegation.  <u>Id</u>.  Unlike the plaintiff in <u>Lee</u>, the plaintiff presently under consideration was never subject to rumors of sexual misconduct being spread throughout his workplace.  Instead, plaintiff only alleges his work schedule was more closely monitored and that he was eventually investigated for one of his trips to NYDOL's office in New York City.

   Nevertheless, it is undisputed that plaintiff was penalized two hours of claimed work time as a result of the investigation, and plaintiff asserts that this penalty was in retaliation for his prior complaints of discrimination and a hostile work environment.  Although plaintiff was only penalized for a relatively short period of work time, it is at least a close question whether being docked part of one's workday could dissuade a reasonable employee from coming

forward with a charge of discrimination.  Therefore, to the extent plaintiff was penalized following the Inspector General's investigation of his trip to the NYDOL office in New York City, he has raised an issue of fact for whether he suffered an adverse employment action. However, his other allegations related to the monitoring of his work schedule do not meet the Burlington standard.

### b. The Relocation of Plaintiff's Office

Plaintiff alleges the relocation of his office from the fifth floor to the first floor of the NYDOL building in Albany constituted an adverse employment action.  According to plaintiff, the relocation of his office would tend to deter a reasonable employee because offices on the fifth floor were more prestigious, he needed to keep the blinds in his new office closed in order to have privacy, and visitors were discouraged from stopping by due to the additional security measures for entering the first floor.

Although perhaps inconvenient, the relocation of plaintiff's office does not rise to level of an adverse employment action.  Even if the decision to move plaintiff to the first floor was the product of a retaliatory motive, plaintiff's complaints about his new office fall squarely within the class of trivial harms that the Burlington Court held Title VII was not intended to protect against.  C.f. Spector v. Bd. of Trs. of Cmty.-Technical Colls., No. 3:06-CV-129, 2007 WL 4800726, at *8-9 (D. Conn. Dec. 27, 2007), aff'd, 316 F. App'x 18 (2d Cir. 2009). Accordingly, the relocation of plaintiff's office did not constitute an adverse employment action, and that allegation need not be considered further.

### c. Defendant Hines's Objection to the Hiring of Plaintiff's Son

Plaintiff also alleges that defendant Hines's objection to the hiring of his son as a temporary NYDOL employee was in retaliation to his prior complaints of discrimination and a

hostile work environment.  Defendant Hines allegedly told Mr. Leary not to hire plaintiff's son because she suspected he too would be a "time abuser."  However, regardless of defendant Hines's motivation, it remains undisputed that plaintiff's son was soon hired over defendant Hines's objections.  Furthermore, defendant Hines is only alleged to have communicated her concerns over hiring plaintiff's son to Mr. Leary.   In light of these facts, defendant Hines's opposition to hiring plaintiff's son is too attenuated and too insignificant to meet the standard for an adverse employment action established in Burlington.

### d. The Reduction in Plaintiff's Workplace Responsibilities

A significant reduction in an employee's material responsibilities will constitute an adverse employment action in a Title VII retaliation claim.  Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007) (citations omitted).  As a preliminary matter, it is undisputed that two of the four alleged events contributing towards a reduction in plaintiff's workplace responsibilities occurred after the filing of plaintiff's complaint on September 7, 2005: (1) NYDOL contracted with an outside consulting firm sometime between May and August of 2006 to provide functional alignment training; and (2) plaintiff unsuccessfully sought the termination of probationary employee Ms. Thayer in an evaluation dated June 27, 2006.  On February 1, 2007, plaintiff belatedly requested an extension to amend his complaint, and this request was denied by the Magistrate Judge via text order.  Plaintiff was also afforded the opportunity to respond to defendants' argument that these two allegations fall outside the scope of his complaint, but he declined to address this issue in his reply memorandum of law.  (See Pl.'s Reply Mem. of Law, Dkt. No. 57, 7-8).  Accordingly, neither the use of an outside contractor to provide functional alignment training nor the alleged usurping of plaintiff's authority to fire Ms. Thayer will be considered further.

The remaining alleged reductions in plaintiff's workplace responsibilities consist of defendants' failure to seek his approval for a Welfare-to-Work conference and the discontinuation of NYDOL's CSI conferences. Significantly, several material facts related to the Welfare-to-Work conference are undisputed: first, that the conference at issue was held from November 30, 2004 until December 2, 2004; second, that plaintiff was excluded from the initial request for funding; third, that plaintiff later received a funding request for the conference on or before November 16, 2004; and fourth, that plaintiff was contacted for funding requests related to all subsequent Welfare-to-Work conferences. (Compare Defs.' Statement of Material Facts, Dkt. No. 36-96, ¶¶ 106-107 with Pl.'s Resp. to Defs.' Statement of Material Facts, Dkt. No. 40-2, ¶¶ 106-07;[3] see also Defs.' Ex. 52 to Seaman Aff., Dkt. No. 36-40.) Plaintiff asserts that he was initially excluded from the funding approval process in retaliation to his prior complaints of discrimination and a hostile work environment, whereas defendants maintain that any exclusion of plaintiff was unintentional.

Rather than dispute the extent of the exclusion, the parties only contest the motivation, or lack thereof, for initially excluding plaintiff from the funding approval process. Plaintiff does not refute, let alone offer evidence against, defendants' assertion that his initial exclusion from the funding approval process was nothing more than a singular event that was soon remedied with respect to future Welfare-to-Work conferences. This alleged act of retaliation stands in stark contrast to cases where a plaintiff's decision to come forward with a

---

[3] Although afforded the opportunity to deny each of defendants' assertions with respect to the Welfare-to-Work conference, plaintiff only denied that he was unintentionally omitted from the initial funding request for the conference. (Pl's Resp. to Defs.' Statement of Material Facts, Dkt. No. 40-2, ¶ 107.) As a result, plaintiff admits all of defendants' other factual assertions related to the Welfare-to-Work conference. N.D.N.Y. R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.")

complaint of discrimination is met with a more significant and/or permanent diminution of his material responsibilities.  See, e.g., Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 209-10 (2d Cir. 2006); see also Desphande v. Medisys Health Network, Inc., No. 07-CV-375, 2010 WL 1539745, at *13 (E.D.N.Y. April 16, 2010) (holding that the reinstatement of a plaintiff's prior working conditions supported the determination that he had not suffered an adverse employment action).  Therefore, given the briefness of plaintiff's exclusion from the funding approval process for Welfare-to-Work conferences, that allegation does not constitute an adverse employment action.

With respect to defendants' decision to discontinue future CSI conferences, the parties again agree on the action that was taken and disagree only as to the motivating factors.  Plaintiff alleges defendants cancelled the CSI conferences out of retaliation for his complaints of discrimination and a hostile work environment, but defendants contend the conferences were discontinued due to a lack of funding.  No matter the reasons behind defendants' action, it is undisputed that plaintiff remained responsible for overseeing NYDOL's training programs after the CSI conferences were discontinued.  Additionally, the CSI conferences were not a mainstay of plaintiff's workplace responsibilities; rather, the conference he organized in September of 2004 was the first such conference hosted by NYDOL.  Therefore, a reasonable employee would not be dissuaded from coming forward with a charge of discrimination because of defendants' decision to discontinue future CSI conferences, particularly because plaintiff remained in charge of NYDOL's training programs.

### 2. Legitimate, Non-Retaliatory Reasons

As discussed, the only alleged act of retaliation to meet the Burlington standard for an adverse employment action was plaintiff's loss of two hours of claimed work time.  Plaintiff

contends defendants are unable to satisfy their burden to produce evidence of a legitimate, non-retaliatory reason because, in his opinion, there was no reason to suspect that he was abusing his work time while traveling to New York City. (Pl.'s Mem. of Law, Dkt. No. 56, 15-16.) However, plaintiff's argument fails in light of several key admissions. First, he admits that he traveled to New York City on October 14, 2004 to meet with an NYDOL employee, Kathy Pete, whose office was located next to his own on the first floor of the NYDOL building in Albany. (Pl.'s Resp. to Defs.' Statement of Material Facts, Dkt. No. 40-2, ¶ 90-91.) Rather than meet in Albany, he and Ms. Pete spent part of their work day traveling to New York City, thereby unnecessarily extending plaintiff's trip an extra day as this was the only meeting he attended on October 14, 2004. Additionally, plaintiff's decision to travel to New York City directly contradicted his prior instructions for his staff to use video-conferencing in lieu of traveling far distances in order to save costs for NYDOL. See id. ¶ 89. Finally, he claimed to have worked over the telephone for an additional two hours in his hotel room on October 14, 2004, but he admits his cell phone records do not substantiate his claim. Id. ¶ 92. At the very least, plaintiff's decision to meet with Ms. Pete in New York City and forgo the use of video-conferencing constituted poor judgment and raised an inference that he was abusing his work time. Moreover, his inability to provide cell phone records that corroborate his account of working from his hotel room serves as a legitimate, non-retaliatory reason for docking him two hours of claimed work time.

### 3. Pretext

Under the third and final stage in the McDonnell Douglas burden shifting analysis, plaintiff must come forward with sufficient evidence to show that defendants' proffered reasons were mere pretext for unlawful retaliation. 411 at 804, 93 S. Ct. at 1825. Plaintiff

offers only a brief argument that defendants' proffered reasons "are pretextual given the complete lack of any evidence to support of [sic] such claims [of time abuse]." (Pl.'s Mem. of Law, Dkt. No. 56, 16.)  Notably, plaintiff never alleges that other NYDOL employees engaged in the same travel practices but were not investigated.  Instead, he relies on his conclusory argument that defendants had no reason to suspect him of time abuse.  In light of the circumstances surrounding plaintiff's trip to New York City, plaintiff does not raise an issue of fact that, even if construed in the light most favorable to him, would tend to show that defendants' proffered reasons for investigating and disciplining him were mere pretext.  Therefore, defendants' summary judgment motion for plaintiff's Title VII retaliation claims will be granted.

### B.  First Amendment Retaliation Claims

Plaintiff also asserts that his First Amendment rights were violated when defendants allegedly retaliated against him for complaining about defendant Hines's prayer breakfast email.  In order to establish a First Amendment retaliation claim, plaintiff must show: "(1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008) (citation omitted).  With respect to the second prong, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotations and citation omitted).  Accordingly, for the same reasons as with respect to plaintiff's Title VII retaliation claims, only the investigation and subsequent penalty imposed on plaintiff for his travel to New York City constitutes an adverse employment

action, and the other alleged acts of retaliation giving rise to plaintiff's First Amendment claim need not be considered.

Whether plaintiff's speech addressed a matter of public concern is irrelevant if he cannot establish a causal connection between his protected speech and the investigation and ensuing penalty imposed by defendants for his travel to New York City.  In order to establish a causal connection, plaintiff must raise an issue of fact that would demonstrate that his protected speech was a substantial factor for the adverse employment action. Cotarelo v. Village of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006) (quoting Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994)).  However, summary judgment is still warranted notwithstanding evidence of a causal connection so long as the defendant "can show that it would have taken the same adverse employment action 'even in the absence of the protected conduct.'" Cotarelo, 460 F.3d at 251-52 (quoting Blum, 18 F.3d at 1010).

Defendants' legitimate, non-retaliatory reasons for investigating plaintiff's travel and eventually penalizing him two work hours are sufficient to demonstrate that they would have taken the same conduct even if plaintiff had never complained about defendant Hines's prayer breakfast email.  Just as plaintiff fails to satisfy his burden to establish pretext in connection with his Title VII retaliation claims, he does not present any evidence to show that defendants would not have investigated his time travel and penalized him two work hours had he not complained of defendant Hines's email.  Therefore, plaintiff's First Amendment claim will be dismissed.

## IV. **CONCLUSION**

The majority of plaintiff's allegations are subject to dismissal because, even if they were the product of a retaliatory motive, they would not dissuade a reasonable employee

from coming forward with a charge of unlawful discrimination.  With respect to the remaining allegations of retaliation under Title VII, plaintiff has not met his burden to raise an issue of fact that would tend to show defendants' proffered reasons were mere pretext for unlawful retaliation.  Likewise, there are no issues of fact that, if construed in the light most favorable to plaintiff, would demonstrate that defendants would not have engaged in the same conduct in the absence of plaintiff's protected speech.  These deficiencies render all other issues and arguments moot.

Accordingly, it is

ORDERED that

(1) Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED;

(2) Plaintiff's complaint is DISMISSED; and

(3) The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 30, 2010
       Utica, New York